Town and Country Club v. Commissioner.
Town & Country Club v. Commissioner
Docket No. 105877.
United States Tax Court
1942 Tax Ct. Memo LEXIS 3; 1 T.C.M. (CCH) 334; T.C.M. (RIA) 42672; 12/30/1942
*3 Donald M. Gregory, Esq., for the petitioner. Alva C. Baird, Esq., for the respondent. ARNOLD Memorandum Findings of Fact and Opinion ARNOLD, Judge: This proceeding involves deficiencies in income taxes for the fiscal years ended February 28, 1938 and 1939, in the respective amounts of $1,010.26 and $591.87. The first issue is whether petitioner is an exempt corporation within the meaning of section 101(9), Revenue Acts of 1936 and 1938. If exemption is denied, the further question is presented of whether initiation fees received in each year and $1,000.00 received during the fiscal year 1938 from the sale of a life membership represented taxable income or contributions to capital. Findings of Fact Petitioner is a California corporation organized on February 10, 1909. Its income tax returns for the fiscal years 1938 and 1939 were filed with the collector at San Francisco. The purposes for which petitioner was incorporated are set forth in its Articles of Incorporation as follows: * * *
Second: That the purposes for which it is formed are: To promote social intercourse among its members, and to maintain a reading room and circulating library and other club rooms for the *4 use of its members, all under such rules, regulations, by-laws, or discipline as the said corporation may establish; and to acquire, by purchase, lease, or otherwise, maintain and operate, a clubhouse and such real and personal property as may be requisite or useful or convenient to fully carry out the purposes of its incorporation or as may be so deemed by its board of directors. * * *
Sixth: That said corporation is not formed with the object of pecuniary profit and has no capital stock. The by-laws of the petitioner, effective during the fiscal years 1938 and 1939, stated that the "objects of the Club are to promote social intercourse among its members and to maintain a reading room, circulating library, and other club rooms for the use of its members." Legal title and ownership of all its property and assets were vested in "Town and Country Club" and only members who had paid their full initiation fee at the time of their admission had any interest in the property of the petitioner. If a member resigned or otherwise ceased to be a member "all her interest in and to the property and privileges of the Club shall cease and revert to the Club, and such cessation of membership *5 shall operate as a release and assignment to the Club of all rights, title, and interest of such member in and to the property and privileges of the Club." Membership was limited to 550 resident members, 100 non-resident members, 50 Army and Navy members, 20 life members and 5 honorary members. The initiation fee for resident and non-resident members was $100. Candidates under 25 years of age were admitted at half price. Life members paid $1,000 but were exempt from dues. Honorary members were exempt from dues, fines and assessments. Army and Navy members were admitted without initiation fee but paid dues of $6 per month, the same as resident and non-resident members. Any woman over 17 years of age was eligible for membership. She had to be proposed for membership by one member, seconded by two other members, all of whom had known the candidate personally for a period of at least one year, and elected by the board of directors. The dues and the initiation fees of the petitioner have been unchanged for approximately the last 25 years. On August 1, 1913, petitioner purchased the property serving as its present club house at 218 Stockton Street. The property was purchased for club purposes. *6 This site was preferred over other sites because it was located in the best shopping district of downtown San Francisco. At the time petitioner acquired said premises the ground floor of the building had two stores that were under lease. The petitioner has continued to lease this store space. It remodeled the three upper floors for the use of the club. After remodeling, petitioner's quarters included a dining room, a library, bedrooms, and the usual conveniences incident to a club of this character. Petitioner is essentially a luncheon club with no substantial activities other than the middle of the day. The club is maintained for the exclusive use of its members and their guests. The prices charged for the luncheons have always been the same, and the dining room has always shown a loss from operation, which amounted to $5,547.14 and $6,216.18 for the fiscal years 1938 and 1939, respectively. This loss is made up from other receipts of the club, which for the fiscal years 1938 and 1939 were derived from the following sources: 1938
1939
Dining room
$19,076.95
$17,501.55
Library (fines against
members)
261.79
246.19
Bedrooms
221.50
142.50
Membership dues
29,971.50
30,339.00
Membership fines
229.00
284.00
Guest cards and dues
260.00
282.00
Interest
80.97
90.92
Initiation fees
1,200.00
1,250.00
Life membership
1,000.00
Rentals from stores
9,600.00
10,050.00
Total
$61,901.71
$60,186.16
*7 Petitioner's store rentals after deducting expenses properly allocable thereto netted it approximately $2,100 for each of the taxable years. Prior to the fiscal year ended February 28, 1938, petitioner was considered an exempt corporation. Beginning with the taxable year 1938 an exempt status was denied and petitioner was instructed to file an income tax return for that and each succeeding taxable year. Petitioner filed its returns for the taxable years involved herein under protest, contending that it is a non-profit social club entitled to exemption under the provisions of section 101(9), Revenue Acts of 1936 and 1938, and showing no tax due for either year. Respondent denied exemption for the reason that petitioner was not operated exclusively for pleasure, recreation, or other non-profitable purposes, determined that petitioner had an adjusted net income for the fiscal years 1938 and 1939 of $6,056.52 and $4,734.92, respectively, and fixed petitioner's tax liability for the taxable years involved in the amounts hereinabove set forth as deficiencies. The petitioner is a social club organized and operated exclusively for pleasure, recreation and other non-profitable purposes, *8 no part of the net earnings of which inures to the benefit of any private shareholder. Opinion Respondent submits that petitioner has not shown (1) that it has been operated exclusively for pleasure, recreation and other non-profitable purposes, and (2) that no part of its net earnings inured to the benefit of any of its shareholders. He contends that petitioner is engaged in the business of renting space in its building for commercial purposes which returns an annual rental of $9,600 and $10,050 for the taxable years 1938 and 1939. It is urged that the statutory language "operated exclusively" must be given effect and must not be disregarded. Respondent argues that but for its rental income petitioner would have been forced to increase its dues, raise the price of its meals, or levy an assessment upon its members in order to make up the loss on operating the dining room. He contends, therefore, that the earnings of petitioner did inure in a very direct way to the benefit of petitioner's members. Respondent cites and relies upon Uniform Printing & Supply Co. v. Commissioner, (CCA 7), 33 Fed. (2d) 445; West Side Tennis Club v. Commissioner (CCA 2), 111 Fed. (2d) 6, *9 and distinguishes Trinidad v. Sagrada Orden de Predicadores, 263 U.S. 578. Petitioner relies, inter alia, upon Koon Kreek Klub v. Thomas (CCA 5), 108 Fed. (2d) 616; Scofield v. Corpus Christi Golf & Country Club, (CCA 5) 127 Fed. (2d) 452; Trinidad v. Sagrada Orden de Predicadores, supra, and Unity School of Christianity, 4 B.T.A. 61, to support its contention that it is a bona fide social club and an exempt corporation within the meaning of section 101 (9), Revenue Acts of 1936 and 1938. [1] Petitioner takes the position that the small profit realized from the rental of its ground floor is incidental to the main purpose of the organization and that such income is entirely devoted to the pleasure and recreation of its members. Petitioner points out that since the Supreme Court's opinion in the Trinidad case, supra, it has been consistently held that it is not the source of the corporation's incidental profits that is controlling but their destination which controls exemption from tax. *10 Upon analysis of the above authorities in connection with the facts herein we are satisfied that any net rentals realized by the petitioner are incidental to its principal reason for being, namely, to promote social intercourse among its members and to maintain a reading room, a circulating library, and other club rooms for the use of its members. The club was intentionally located in downtown San Francisco where it would afford the maximum convenience, pleasure and service to its members. Petitioner's president testified that the lower floor was unsuitable for club purposes but that the property was otherwise desirable from the standpoint of its location, convenience to the shopping center, and as a general gathering place for the club members. Respondent's argument that the earnings realized by petitioner from its store rentals should deprive petitioner of an exempt status is effectively rebutted by the petitioner's showing that its net rentals are more than offset by losses sustained in operating its dining room. We do not think, however, that petitioner's tax status should turn upon one phase of its overall operations. All facts and circumstances relating to its existence and *11 operation should be examined to determine whether it is "operated exclusively for pleasure, recreation and other nonprofitable purposes" within the meaning of section 101 (9), supra. For the reasons hereinabove given we believe that the facts of record support petitioner and refute respondent's contention on his first point. As to the second point urged by respondent, the record is also against him. Petitioner's by-laws definitely provide that any interest in the property or privileges of the club shall cease and revert to the club upon cessation of membership for any reason. Thus no member could take with her any interest in the property or assets of the club. The termination of her membership operated automatically, under the by-laws, as a release and an assignment to the club of all rights, title and interest formerly possessed by said member. The argument that increased dues, luncheon prices, or assessments, might have been necessary but for rental income is speculative and not persuasive. It is much more logical to say that the losses sustained in operating the dining room could have readily been absorbed by income from dues which was five or six times in excess of said *12 losses. We can not agree therefore that any part of petitioner's net earnings inured to the benefit of its members so as to deprive petitioner of its tax exempt status. In view of our holding that petitioner is an exempt corporation, it is unnecessary to discuss the alternative questions as to initiation fees and the sale of a life membership. Decision will be entered for the petitioner. Footnotes
1. SEC. 101. EXEMPTIONS FROM TAX ON CORPORATIONS. The following organizations shall be exempt from taxation under this title - (9) Clubs organized and operated exclusively for pleasure, recreation, and other nonprofitable purposes, no part of the net earnings of which inures to the benefit of any private shareholders;↩