Keco Industries, Inc. v. Commissioner.
Keco Industries, Inc. v. Commissioner
Docket No. 56123.
United States Tax Court
T.C. Memo 1957-12; 1957 Tax Ct. Memo LEXIS 242; 16 T.C.M. (CCH) 61; T.C.M. (RIA) 57012; January 24, 1957
*242 Held: Petitioner has not proven that contributions to a profit-sharing plan are deductible under section 23(p)(1)(A), I.R.C. 1939. Held: Contributions to a profit-sharing plan were not deductible under section 23(p)(1)(D) because the rights of an employee therein were not "nonforfeitable". William M. Bailey Co., 15 T.C. 468, affd. (C.A. 3) 192 Fed. (2d) 574, followed. Charles H. Tobias, Jr., Esq., for the petitioner. David M. Robinson, Esq., for the respondent. TIETJENS
Memorandum Findings of Fact and Opinion TIETJENS, Judge: The *243 Commissioner determined a deficiency in income tax for the year 1951 in the amount of $2,613.46. The question for decision is whether the Commissioner erred in disallowing a deduction for a contribution to a profit sharing trust in the amount of $3,843.33. The facts have been stipulated and the stipulation is adopted as the findings of fact [Findings of Fact] Petitioner is a corporation incorporated under the laws of Ohio. Its return for 1951 was filed with the collector of internal revenue for the first district of Ohio. Petitioner executed an employees' benefit plan known as the Keco Profit-Sharing Plan on January 5, 1951. The plan provided, in part, as follows: "WHEREAS Keco Industries, Inc. (hereinafter referred to as 'Keco') desires to inaugurate an employees' benefit plan (hereinafter called 'the Plan') to provide future benefits to all present and future employees of the Company who will have remained with the Company during a considerable portion of their productive years and who are eligible as hereinafter provided; and "WHEREAS, for the purpose of carrying out the Plan, a trust is being created simultaneously herewith by the execution of a trust agreement, *244 a copy of which is annexed hereto and made a part hereof: * * *
"III. MEMBERSHIP "(1) Each employee of the Company, who, on the effective date, is and has been continuously employed as a full time employee of the Company for not less than 1 full year last past shall become a member of the Plan, hereinafter called a 'member', as of the effective date. "(2) Each employee of the Company not already then a member, who on any anniversary date is and has been continuously employed by the Company for not less than 1 full year last past, shall become a member of such anniversary date. "(3) Any time spent in the armed forces of the United States of America following immediately upon time spent in the service of the Company by an employee of Keco who is received back into the service of Keco within six months after the date of his discharge from the armed forces, shall count as a part of the continuous employment by Keco of such employee in determining his eligibility for membership (or for purposes of this Plan). "(4) Except as provided in (3) above, a former employee upon reemployment after termination of employment shall be deemed a new employee for the purpose of qualifying *245 as an eligible employee and no credit for the prior employment shall be allowed in computing the eligibility period. "(5) Except as provided in (3) above, any person whose customary employment is not for more than twenty hours in any one week or for not more than five months in any calendar year shall not be considered an employee for the purposes of this Plan. "(6) The membership of a member shall cease upon termination of his service on account of death, disability, retirement or for any other reason and upon the occurrence of any such event, the benefit of a member, if any, shall be computed under Paragraph VIII and distributed under Paragraph IX. "(7) Unless Keco through its duly authorized officers shall affirmatively certify to the Committee that the employment of a particular employee has been terminated, any interruption in employment for sixty (60) days or less shall be deemed a leave of absence, not terminating or interrupting continuous employment, but the period thereof shall not be included in the calculation of the period of continuous employment for the purpose of (5) hereof. In all other respects, the Committee shall determine according to regular rules applicable *246 in all similar cases whether or not a particular employment shall be deemed continuous for the purposes of this Plan and any other questions with respect to eligibility and its determination shall be final and conclusive on the employee involved and upon Keco and all members. "(8) Employees who become members of the Plan on its effective date or any anniversary date must, nevertheless, be continuously employed by the Company throughout the whole of any year in order to be entitled to share in the allocation of the contribution in respect of that year. "(9) The foregoing provisions of this Article notwithstanding, no officer or salaried employee shall be a member of the Plan. "IV. COMPANY CONTRIBUTIONS "Keco will contribute to the Trust in respect of each calendar (fiscal) * year, 10% of its 'income' after deduction of all expenses except the contribution to the Trust and except income and excess profits taxes; provided, however, that the contribution in respect of any one year shall not exceed 15% of the aggregate compensation of the members in the year in respect of which such contribution is made; and, provided further that the Committee, in its sole discretion, may cause *247 the Company to distribute all or any part of any annual contribution in cash directly to the members. * * * "V. ALLOCATION OF COMPANY CONTRIBUTIONS * * * "The fact that allocations shall be made and credited to the account for a member shall not vest any right, title or interest in the assets in such member except at the time or times and upon the terms and conditions herein provided. "VI. ADMINISTRATION OF FUNDS * * * "On the basis of the valuation as of the end of the year, and when necessary or advisable on the basis of quarterly valuations, the member accounts maintained under the direction of the Committee shall be adjusted to reflect the effect of income, collected and accrued, realized and unrealized profits and losses, expenses, forfeitures and all other transactions during the year. Such valuation and such adjustments of the member accounts shall be made so as to preserve for each member's account its beneficial interest in the Fund. * * *
"VIII. BENEFITS FOR MEMBERS "The net value of each member's account shall only be disposed of in any of the following events and then only to the extent and as hereinafter provided: "(1) Severance of Employment. *248 In the event of the discharge or resignation of a member prior to retirement, the Committee shall direct that such member's Severance Benefit as hereinafter defined shall be distributed to him in accordance with Article IX, (provided, however, that no distribution shall be made until the expiration of six months after the date of severance of employment). A member's Severance Benefit shall be an amount equal to ten per cent (10%) of the net value of his account on the valuation date next subsequent to the date of his severance from service for each full year of service with Keco after becoming a member under the Plan, but in no event more than one hundred per cent (100%) of such net value of the assets in the account of the member. * * *
"IX. METHOD OF DISTRIBUTION OF BENEFITS "Except as limited by Article VIII(1), benefits shall be distributed by whichever of the following methods the Committee in its sole discretion may determine: "1. By payments over a period of time in such amounts and at such intervals as the Committee may determine. In such case, the net value of the member's account as above determined shall be withdrawn from the Fund and maintained as a separate *249 account, subject, however, to the administrative provisions of the Plan and the above mentioned Trust Agreement. "2. By a lump sum payment. "3. By the purchase of a life insurance and/or annuity contract. Any such contract may be endorsed so as to provide that the annuity payments shall be non-commutable and non-assignable. * * *
"XI. AMENDMENT AND DISCONTINUANCE "The Plan, as well as any part thereof, is subject to change by the Board of Directors of Keco at any time and from time to time, or may be terminated at any time by the Board of Directors, provided, however, that no change may be made in the Plan which shall vest in Keco directly or indirectly any interest, ownership, or control in the funds or any part of any funds set aside for employees pursuant to the Plan, and provided further that no change may be made which would divest a member of any interest then vested in him, except that any rights accrued or vested under this Plan shall be subject to any amendments made prior to securing or in order to secure the approval of the Commissioner of Internal Revenue as a qualified tax free employee trust under the Internal Revenue Code. In the event of the discontinuance *250 of the Plan, no new funds shall be contributed by Keco and the assets on hand shall be administered and distributed by the Trustee and the Committee in the manner provided in the Plan." A Memorandum of Agreement and trust indenture between Keco Industries, Inc. and The Central Trust Company of Cincinnati, Ohio, was executed on December 31, 1951, which provides in part as follows: "TWELFTH: This Trust and Agreement may be terminated at any time by the Company and upon the termination of the Trust and Agreement or upon the dissolution or liquidation of the Company the Trust Fund shall be paid out by the Trustee as directed by the Committee subject to the provisions of Article Third hereof." Article THIRD of the Memorandum of Agreement provided as follows: "THIRD: Anything contained in this Agreement to the contrary notwithstanding. "It shall be impossible, at any time prior to the satisfaction of all liabilities with respect to the employee members of the Plan or their beneficiaries for any part of the Trust Fund (other than such part as is required to pay taxes and administration expenses) to be used for, or diverted to, purposes other than for the exclusive benefit of the *251 Members of the Plan or their beneficiaries. "In making payment upon a direction as authorized herein, the Trustee may accept such direction as a certification that such payment complies with the provisions of this Article and need make no further investigation." On December 31, 1951, Keco Industries, Inc. contributed under the profit sharing plan the amount of $7,686.66 which represented approximately 10 per cent of its net income before Federal income and excess profits taxes. One-half of this amount, or $3,843.33, was distributed to the employees as a bonus pursuant to the discretion of the profit sharing plan committee and qualified as compensation to the employees for the year 1951. The remaining one-half, or $3,843.33, was contributed in trust pursuant to the trust indenture with the Central Trust Company of Cincinnati, Ohio, and was not distributed to the employee members in 1951. The Commissioner determined the deficiency in income tax referred to above with the following explanation: "Contributions to a profit-sharing trust deducted by you in the sum of $7,686.66 have been allowed in the sum of $3,843.33, and disallowed in the sum of $3,843.33. With respect to the disallowed *252 portion, it is held that the contributions fail to qualify as deductions under section 23 of the Internal Revenue Code, and particularly under section 23(p) thereof. (1939 Code)." In its petition filed herein petitioner alleged error as follows: "The Commissioner erred in disallowing a deduction for a contribution to a profit sharing trust of Petitioner in the sum of $3,843.33 on its Income Tax Return for said year, and in holding that said contribution failed to qualify as deduction under Section 23 of the Internal Revenue Code and particularly under Section 23(p) thereof (1939 Code)." In support of this specification of error the petition stated: "6. That the facts upon which Petitioner relies are as follows: "(a) On January 5, 1951, Petitioner entered into a Profit Sharing Plan with its employees which said Plan became effective on January 1, 1951; and that pursuant to said Plan a Trust Agreement was entered into by Petitioner and the Central Trust Company, Cincinnati, Ohio, for the purpose of augmenting the deferred compensation features of said Plan. "(b) On December 31, 1951, Petitioner paid to said Central Trust Company, *253 as Trustee, as a contribution under said Profit Sharing Plan the sum of $3,843.33 for the benefit of its employees. "(c) A like amount was paid by Petitioner to employees on such date in pursuance of the said Plan. "7. That Petitioner states that the said contribution referred to in Paragraph 6 (b) hereof is deductible by virtue of Section 23(p)(1)(D) of the Internal Revenue Code for the reason that the rights of employees' in and to said contribution were nonforfeitable." Issues, as a general rule, are framed by the pleadings. Here the Commissioner assumed that petitioner "apparently concedes that the contribution is not deductible under section 23(p)(1)(A), (1)(B), or (1)(C) since the deduction is only claimed under section 23(p)(1)(D)," referring to the allegation in the petition quoted above. On this assumption the Commissioner was content to submit the case on the stipulation of facts outlined in our findings. The Commissioner now contends that the stipulated facts are inadequate to permit a decision of the case on any but the section 23(p)(1)(D) issue. There is considerable merit in the Commissioner's position. See F. H. Philbrick, 27 T.C. - (No. *254 36). Nevertheless, petitioner argues on brief that the contribution is deductible either under section 23(p)(1)(A) or section 23(p)(1)(D) and we will give consideration to both sections so far as the facts of record permit. To meet petitioner's argument that section 23(p)(1)(A)[1] and section 165 read together permit the deduction, the Commissioner points to the detailed requirements of Regulations 111, sec. 29.23(p)-2,-(p)-11; sec. 29.165-1 and sec. 29.165-7 and argues that the stipulated facts are so sketchy that petitioner has not carried its burden of proving itself entitled to the deduction claimed. We agree. We do not think it is necessary to discuss the regulations in extenso, but deem it sufficient to point up a few deficiencies in proof. Regulations 111, sec. 29.23(p)-2 specifically requires that if a deduction is claimed under section 23(p)(1)(A) the employer must file information for the plan involved to establish that it meets the requirements of section 165(a) and that the claimed deductions do not exceed the amounts allowable under the various subsections of section 23(p). This requirement embraces information with respect to the 25 highest paid employees, whether they *255 are stockholders, their duties, etc. No evidence of this nature is in the record. There are also percentage limitations in the statute based on total compensation paid to all employees under the trust or plan. No proof has been offered that these limitations have been met. Furthermore, petitioner admits on brief that the plan has never formally been approved by the Commissioner and that "it does violate several provisions of the regulations" laid down by the Commissioner. In the face of a record so incomplete we can only conclude that petitioner has failed to prove it is entitled to the claimed deduction under section 23(p)(1)(A). *256 Turning now to the claimed deductibility of the contributions under section 23(p)(1)(D), [2] we note that a contribution under that section is deductible if the employees' rights to or derived from such contribution are "nonforfeitable" at the time the contribution is paid. In this respect it will be seen from the provisions of the plan with reference to severance of employment that in such an eventuality an employee's severance benefit is limited to 10 per cent of the net value of his account for each full year of service after becoming a member of the plan. Article VI of the plan also provides that members' accounts shall be periodically adjusted to reflect, among other things, "forfeitures". Thus, an individual employee certainly will not receive his full share of the contribution unless he serves a ten-year period, and, if he serves less than ten years, the remainder of his share will be lost *257 or forfeited so far as the individual employee is concerned. Petitioner, nevertheless, argues that this situation does not amount to a forfeiture of "employees'" rights within the language of the statute, since the term as there used does not refer to the rights of an individual employee, but to the rights of "employees" as a class; and that although the plan may envisage the forfeiture of rights on the part of an individual employee, yet such a forfeiture will never inure to the advantage of the employer (petitioner) but will be a forfeiture to the trust for the benefit of all employees who remain members of the plan. We stated with reference to a similar contention in William M. Bailey Co., 15 T.C. 468, that "Under petitioner's theory, restriction of the benefits to 'employees' as a class, or their families, would meet the nonforfeitability requirement of the statute". We there held that petitioner's theory was wrong, and citing Times Publishing Co., 13 T.C. 329, pointed out that "employees' rights" refer to the rights of specific beneficiaries and not to the rights of employees as a class. The Bailey case was affirmed (C.A. 3) 192 Fed. (2d) 574. *258 Petitioner contends that Bailey, supra, was wrongly decided, citing H.S.D. Company v. Kavanagh (C.A. 6) 191 Fed. (2d) 831, reversing a district court decision. But in that case the court of appeals was considering only the exemption of the trust under section 165(a) which contains no express provisions as to nonforfeitability. As we read the court's opinion there, the express provisions of section 23(p)(1)(D) were not passed upon, and whether the term "employees' rights" as used therein refers to the rights of employees as a class or to the rights of an individual employee was not decided. Relying on William M. Bailey Co., supra, we hold that the contribution here involved was not deductible under section 23(p)(1)(D) because the rights of an employee therein were not nonforfeitable at the time the contribution was made. Decision will be entered for the respondent. Footnotes
1. SEC. 23. DEDUCTIONS FROM GROSS INCOME. In computing net income there shall be allowed as deductions: * * *
(p) Contributions of an Employer to an Employees' Trust or Annuity Plan and Compensation Under a Deferred-Payment Plan. - (1) General Rule. - If contributions are paid by an employer to or under a stock bonus, pension, profit-sharing, or annuity plan, or if compensation is paid or accrued on account of any employee under a plan deferring the receipt of such compensation, such contributions or compensation shall not be deductible under subsection (a) but shall be deductible, if deductible under subsection (a) without regard to this subsection, under this subsection but only to the following extent: (A) In the taxable year when paid, if the contributions are paid into a pension trust, and if such taxable year ends within or with a taxable year of the trust for which the trust is exempt under section 165(a), in an amount determined as follows: (i) an amount not in excess of 5 per centum of the compensation otherwise paid or accrued during the taxable year to all the employees under the trust, * * *↩
2. SEC. 23(p)(1)
(D) In the taxable year when paid, if the plan is not one included in paragraphs (A), (B), or (C), if the employees' rights to or derived from such employer's contribution or such compensation are nonforfeitable at the time the contribution or compensation is paid.↩